# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 4, 2005 Session Heard at Knoxville



FILED

SEP 0 0 2005

Clerk of the Courts

## JANICE W. PURKEY, ET AL. v. AMERICAN HOME ASSURANCE COMPANY d/b/a AIG INSURANCE COMPANY, ET AL.

**Rule 23 Certified Question of Law**
**United States District Court for the Eastern District of Tennessee**
**No. 3:04-CV-331     James H. Jarvis, II, Judge**

---

**No. M2005-00044-SC-R23-CQ**

---

### JUDGMENT

This cause came to be heard upon the briefs and argument of counsel on three questions certified to and accepted by this Court from the United States District Court for the Eastern District of Tennessee concerning whether provisions in automobile insurance liability policies that exclude coverage for bodily injury to household or family members of the insured are void as against Tennessee law or public policy. Upon consideration thereof and in accordance with the opinion filed herein, this Court concludes that family or household exclusions in automobile liability insurance policies do not violate Tennessee law or public policy. We therefore answer the first certified question in the negative and do not reach the second and third questions.

The Clerk will transmit this opinion to the United States District Court for the Eastern District of Tennessee, Knoxville Division, and to the parties in accordance with Rule 23, § 8 of the Tennessee Supreme Court Rules. The costs in this Court shall be assessed equally among the parties, Janice W. Purkey and American Home Assurance Company.

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 4, 2005 Session Heard at Knoxville


FILED

SEP ? ? 2005

Clerk of ... Courts

## JANICE W. PURKEY, ET AL. v. AMERICAN HOME ASSURANCE COMPANY d/b/a AIG INSURANCE COMPANY, ET AL.

**Rule 23 Certified Question of Law**
**United States District Court for the Eastern District of Tennessee**
**No. 3:04-CV-331      James H. Jarvis, II, Judge**

---

### No. M2005-00044-SC-R23-CQ

---

We accepted three questions certified to this Court from the United States District Court for the Eastern District of Tennessee concerning whether provisions in automobile insurance liability policies that exclude coverage for bodily injury to household or family members of the insured are void as against Tennessee law or public policy. We conclude that such provisions are valid.

### Tenn. Sup. Ct. R. 23 Certified Question of Law

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

A. James Andrews and Sidney W. Gilreath, Knoxville, Tennessee, for the Plaintiff/Petitioner, Janice W. Purkey.

Melinda Meador and Erica Greene, Knoxville, Tennessee, and Sylvia H. Walbolt, Tampa, Florida, for the Defendant/Respondent, American Home Assurance Company d/b/a AIG Insurance Company.

R. Layne Holley, Germantown, Tennessee, for the Amicus Curiae, The Property Casualty Insurers Association of America.

## OPINION

Pursuant to Rule 23 of the Tennessee Supreme Court, the United States District Court for the Eastern District of Tennessee has certified three questions to this Court. The questions arose in the course of a lawsuit brought by petitioner Janice W. Purkey ("Purkey") against her automobile insurer, respondent American Home Assurance Company ("AHA").

## Background

Purkey's complaint alleged the following facts. Purkey purchased an automobile insurance policy from an agent of AHA. The policy included liability coverage. On June 24, 2003, Purkey was a passenger in her insured vehicle when the driver negligently lost control of the car and struck a guardrail, injuring Purkey. Purkey submitted a claim to AHA seeking coverage for the injury she sustained in the accident. AHA refused the claim, citing an exclusion in the policy which provided, "We do not provide liability Coverage for any 'insured' for 'bodily injury' to you or any 'family member.'" This type of exclusion is referred to as a "household" or "family" exclusion.

Purkey filed a class action complaint in Knox County Circuit Court seeking class action certification, injunctive relief, and a declaratory judgment that the exclusion was void as contrary to Tennessee law and public policy. AHA removed the case to the United States District Court, and the parties submitted cross motions for summary judgment. Prior to entering a ruling, the District Court issued a certification order certifying the following questions of law to this Court:

(1) Whether provisions in automobile insurance liability policies that exclude coverage for bodily injury to household or family members of the insured are void as contrary to Tennessee law or public policy as a result of the 1997 and 2001 amendments to the Tennessee Financial Responsibility Act.

(2) If the answer to (1) is yes, is coverage only required up to the specified statutory limits or to the policy limits?

(3) If the answer to (1) is yes, on what date did these provisions become void?

We accepted the certified questions. Because we answer the first question in the negative, we do not reach the second and third questions.

## Analysis

This Court has twice held that household and family exclusion clauses in automobile insurance contracts are valid and enforceable. Dockins v. Balboa Ins. Co., 764 S.W.2d 529, 530 (Tenn. 1989); Holt v. State Farm Mut. Auto. Ins. Co., 486 S.W.2d 734, 735 (Tenn. 1972). Purkey argues that such household and family exclusions are no longer compatible with Tennessee public policy as expressed in the Financial Responsibility Law, Tennessee Code Annotated sections 55-12-

-2-

101 to -140 (2004), in light of a two-step development. First, Purkey notes that this Court has abolished intrafamily tort immunity. Broadwell by Broadwell v. Holmes, 871 S.W.2d 471, 476-77 (Tenn. 1994) (greatly abrogating parent-child immunity); Davis v. Davis, 657 S.W.2d 753, 757-58 (Tenn. 1983) (abolishing interspousal tort immunity). Second, Purkey argues that because the Legislature failed in its 1997 and 2001 amendments to the Financial Responsibility Law to permit household or family exclusions after our abolition of intrafamily immunity, such exclusions must be held invalid. AHA counters that household and family exclusions do not violate long-established Tennessee law or public policy.

Insurance policies are contracts between the insurer and the insured and as such are subject to ordinary rules of contract interpretation. Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 814 (Tenn. 2000). Contract provisions that are contrary to public policy may be invalidated. Alcazar v. Hayes, 982 S.W.2d 845, 851 (Tenn. 1998).

It is well-settled that the public policy of Tennessee "is to be found in its constitution, statutes, judicial decisions and applicable rules of common law." Id. (quotation and citations omitted). Because the determination of public policy is primarily a function of the Legislature, the judiciary may only determine public policy "in the absence of any constitutional or statutory declaration." Id. (citation omitted). The General Assembly has legislated extensively in the area of automobile insurance. See, e.g., Tenn. Code Ann. § 55-12-122 (2004); id. §§ 56-7-1101 to -1305 (2000). Before turning to an analysis of the pertinent statutes, however, we review briefly the abolition of intrafamily tort immunity upon which Purkey predicates her argument.

## Abolition of Intrafamily Tort Immunity

Until relatively recently, the common law prevented family members from suing each other in tort. Interspousal tort immunity was predicated on the longstanding concept that there was a "unity of interest of husband and wife in each other's respective rights and duties . . . ." Davis, 657 S.W.2d at 754 (quoting Tobin v. Gelrich, 34 S.W.2d 1058, 1058 (Tenn. 1931)). Parent-child immunity, a more recent development, was based upon the notion of preserving family peace coupled with the parent's right to discipline and control his or her child. See Barranco v. Jackson, 690 S.W.2d 221, 223 (Tenn. 1985) (Drowota, J., dissenting). Following the modern trend, this Court eliminated interspousal tort immunity in 1983 in Davis, 657 S.W.2d at 757-58, and greatly limited parent-child immunity eleven years later in Broadwell, 871 S.W.2d at 476-77.

One practical effect of intrafamily tort immunity was to act as a sort of exclusionary clause. If a husband's negligent operation of the family auto inflicted injuries on the wife, for example, the wife simply could not bring suit against the husband to collect on the auto liability policy. In Davis, this Court acknowledged that abolition of spousal immunity would affect insurance coverage, suggesting that, "to the extent that insurance companies may fear collusive actions, they have the right to protect themselves by either restricting the scope of their coverage or adjusting premiums accordingly." 657 S.W.2d at 758 (quoting Luna v. Clayton, 655 S.W.2d 893, 897 (Tenn. 1983)); see also Dockins, 764 S.W.2d at 530 ("the Legislature ha[s] not required the carrier to provide coverage

-3-

in situations that it unquestionably could exclude from liability coverage, namely, injuries to the insured caused by his own negligence or that of a family member or permittee.").

Notwithstanding this Court's statements in Davis and Dockins, Purkey argues that the abolition of intrafamily tort immunity makes it impermissible to treat family members as a single unit for automobile tort purposes. Because household and family exclusions in automobile insurance policies essentially restore the immunity between family members, she argues that they must be void in light of Davis and Broadwell, unless the Legislature has acted specifically to permit them. She argues that because the Legislature has not so acted, the exclusions violate Tennessee public policy as expressed in the Financial Responsibility Law. We turn next to an examination of that law.

## Financial Responsibility Law

Tennessee first enacted a Financial Responsibility Law in 1949. 1949 Tenn. Pub. Acts ch. 75 (effective July 1, 1949); see also The Tennessee Motor Vehicle Financial Responsibility Act, 21 Tenn. L. Rev. 341, 342 (1950). The current law was enacted in 1977, see Tenn. Code Ann. § 55-12-101, but its core provisions are largely unchanged from the 1949 law. Compare 21 Tenn. L. Rev. at 342-43 with Tenn. Code Ann. §§ 55-12-104-05.

Briefly, the Financial Responsibility Law requires motorists who have been involved in an accident where anyone is killed or injured, or an accident resulting in more than $400 in damage to the property of any one person, to show proof of financial responsibility. Tenn. Code Ann. § 55-12-105; see also id. § 55-12-139. Failure to comply can result in revocation of the motorist's license and registration. Id. § 55-12-105. As amended in 2001, the law requires drivers to provide proof of financial responsibility to an officer at the scene of an accident or a moving violation. Id. § 55-12-139(b). Failure to comply is a Class C misdemeanor punishable by a fine of up to $100. Id. § 55-12-139(c).

The purpose of Tennessee's Financial Responsibility Law is to protect innocent members of the public from the negligence of motorists on the roads and highways. Specifically, "[t]he financial responsibility laws of this State are concerned with the ability of an automobile driver to pay for bodily injury and property damage for which he may be legally liable." Schultz v. Tenn. Farmers Mut. Ins. Co., 404 S.W.2d 480, 484 (Tenn. 1966). The Financial Responsibility Law is not, however, a compulsory insurance law. McManus v. State Farm Mut. Auto. Ins. Co., 463 S.W.2d 702, 703 (Tenn. 1971). Although the law applies to "every vehicle subject to the registration and certificate of title provisions," Tenn. Code Ann. § 55-12-139(a) (eff. Jul. 1, 2005), as we have previously explained,

> the Legislature stopped short of requiring public liability insurance as a condition precedent to the owning or operating of a motor vehicle. The sanctions of this statute are not involved unless and until the owner or operator is involved in an accident resulting in bodily

> injuries or property damage in excess of $[400.00][1]; until such occurs
> a person is at liberty to own and operate a motor vehicle without any
> insurance coverage or with as little insurance coverage as desired.

Id.

Although the Financial Responsibility Law does not, by its express terms, require drivers to obtain liability insurance in order to comply, the Law clearly contemplates that most drivers will comply by purchasing liability insurance. For this reason, the Financial Responsibility Law also sets forth requirements for the contents of motor vehicle liability policies. Tenn. Code Ann. § 55-12-122. The law requires that motor vehicle liability policies "shall insure the person named therein, and any other person using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle . . . ." Id. § 55-12-122(a).

Purkey argues that because the Financial Responsibility Law sets forth a public policy in favor of compensating all innocent victims of motorists' negligence, it contravenes that public policy to exclude from liability insurance policies an innocent class of victims, namely, the family and household members of a negligent driver. Although the Financial Responsibility Law establishes a public policy in favor of compensating innocent victims, it does not establish a policy in favor of all-inclusive insurance coverage for the following reasons.

First, although the Financial Responsibility Law evinces a preference for liability policies, as we have stated, it does not by its plain terms require them. Rather, it requires drivers involved in accidents or cited for moving violations within the terms of the statute to show proof of financial responsibility. As of January 1, 1990, proof of financial responsibility is defined as:

> (i) A written proof of liability insurance coverage provided by a
> single limit policy with a limit of not less than sixty thousand dollars
> ($60,000) applicable to one (1) accident;

(ii) A split-limit policy with a limit of not less than twenty-five thousand dollars ($25,000) for bodily injury to or death of one (1) person, not less than fifty thousand dollars ($50,000) for bodily injury to or death of two (2) or more persons in any one (1) accident, and not less than ten thousand dollars ($10,000) for damage to property in any one (1) accident;

> (iii) A deposit of cash with the commissioner in the amount of sixty
> thousand ($60,000); or

---

[1] Or, under the 2001 amendments, until the driver is charged with a moving violation. Tenn. Code Ann. § 55-12-139(b).

-5-

> (iv) The execution and filing of a bond with the commissioner in the
> amount of sixty thousand dollars ($60,000).

Tenn. Code Ann. § 55-12-102(12)(C). As this statute demonstrates, it is not necessary to prove that one has coverage for all possible victims. Rather, it is simply necessary to prove that one has a policy or other means of satisfying the above provisions. Doing so puts a motorist in compliance with the Financial Responsibility Law for all purposes, including compliance with the misdemeanor provisions.

Second, the Financial Responsibility Law is not the only source of public policy with regard to insurance contracts. The Financial Responsibility Law resides in Title 55 of the Tennessee Code, which covers "Motor and Other Vehicles." However, automobile insurance is also covered by Title 56 of the Tennessee Code, which is applicable to all insurance contracts in the state of Tennessee, including automobile liability policies. Among its many provisions, Title 56 includes the following:

> Notwithstanding any other provision of law to the contrary, an insurer
> may exclude coverage pursuant to a contractual agreement; provided,
> that such exclusion complies with this title.

Tenn. Code Ann. § 56-7-121 (2000). This section was initially enacted in 1995, one year after our decision in Broadwell completed the elimination of intrafamily tort immunity. We see nothing in Title 56, and Purkey points us to no provision in Title 56, that allows us to conclude that family or household exclusions do not comply with that title.

Purkey nonetheless argues that permitting family or household exclusions contravenes the express terms of section 55-12-122(a) that liability policies "shall insure the person named therein, and any other person using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law." (Emphasis added.) She also argues that because the Financial Responsibility Law specifically excludes from its coverage employees and those covered by workers' compensation, see id. § 55-12-122(d), we must infer under the doctrine of expressio unis est exclusio alterius (the expression of some is the exclusion of others) that no other exclusions are permitted.

While we agree with Purkey that family and household exclusions might arguably seem contrary to the legislative intent expressed in the Financial Responsibility Law, we are nevertheless constrained by section 56-7-121. The wording of that section is particularly strong: exclusions are permitted "[n]otwithstanding any other provision of law to the contrary." Tenn. Code Ann. § 56-7-121 (emphasis added). Moreover, the provision is not limited by its terms to Title 56. Id.

By stating that section 56-7-121 controls "notwithstanding" any contrary provisions, the Legislature clearly intended for this provision to trump all others. Representative Rhinehart explained the effect of the section when the bill in which it was contained came before the House for a final vote:

-6-

> the [section] maintains affordability of insurance by affirming the validity of coverage. It furthers Department of Insurance anti-fraud efforts and it preserves the freedom to contract. This is an important piece of legislation if we are to maintain affordable rates for homeowners and automobile insurance. Insurance contracts have a common-sense exclusion designed specifically to combat fraud and collusion and to keep premiums affordable.

Tape H-67, 99th Gen. Assem., 1995 (Apr. 26, 1995) (Statement of Rep. Rhinehart re: HB1303). This statement bolsters our conclusion that section 56-7-121 was intended to permit the very exclusions Purkey challenges here.

The Legislature amended the Financial Responsibility Law in 1997 and again in 2001. None of the amendments related in any way to household exclusions. See 1997 Pub. Acts ch. 394, § 1 (restricting insurers from cancelling a policy based on an accident in which the insured was not at fault); 2001 Pub. Acts ch. 292, § 1 (various provisions intended to increase compliance with the law, including making failure to comply a misdemeanor).[2] Purkey reasons that because these amendments were the first changes to the Financial Responsibility Law after this Court's decisions in Davis and Broadwell, and because the Legislature did not enact provisions specifically permitting household and family exclusions, the Legislature intended to disallow them. We disagree.

This Court and the appellate courts of this state have consistently held that family exclusions are valid and not contrary to public policy. Dockins, 764 S.W.2d at 530; Holt, 486 S.W.2d at 735; see also Nat'l Ins. Ass'n. v. Simpson, 155 S.W.3d 134, 138 n.1 (Tenn. Ct. App. 2004) (perm. app. denied Dec. 6, 2004); Setters v. Permanent Gen. Assurance Corp., 937 S.W.2d 950, 952-53 (Tenn. Ct. App. 1996); Dressler v. State Farm Mut. Auto Ins. Co., 376 S.W.2d 700, 702 (Tenn. Ct. App. 1963). Additionally, section 56-7-121, which gives broad authority for exclusionary clauses, was enacted in 1995, prior to the 1997 and 2001 amendments upon which Purkey relies. Because we assume that the Legislature is aware of the state of the law, Still v. First Tenn. Bank, N.A., 900 S.W.2d 282, 285 (Tenn. 1995), we must also assume that, rather than silently intending to work a major change in this state's insurance law, the Legislature by its silence intended to preserve the status quo permitting family and household exclusions. Cf. id. at 284 (holding that where statute conflicted with previously-enacted statute which controlled "notwithstanding any provisions of law to the contrary," later statute did not repeal earlier statute by implication).

Faced with the above Tennessee statutory and case law, Purkey urges this Court to adopt the rationale of many of our sister states that have held family and household exclusions void as against public policy. See, e.g., Mut. of Enumclaw Ins. Co. v. Wiscomb, 643 P.2d 441, 444-45 (Wash.

---

[2] The legislature again amended the Financial Responsibility Act, after this case was briefed and argued. However, the amendments are not relevant to our analysis. See 2005 Pub. Acts ch. 401 (eff. Jul. 1, 2005) (providing that Act applies to all vehicles subject to registration and title provisions and providing a grace period for soldiers returning from duty overseas).

1982) (exclusions void because they "exclude[] from protection an entire class of innocent victims for no good reason" and because such clauses are not truly bargained-for; rather, they are a "take-it-or-leave-it proposition"); see also Kaiama v. AIG Hawai'i Ins. Co., 930 P.2d 1352, 1355 (Haw. 1997); Estep v. State Farm Mut. Auto. Ins. Co., 703 P.2d 882, 885-87 (N.M. 1985). However, while we do not find the reasoning in these cases to be without merit, we simply are not at liberty to ignore the clear policy articulated by the General Assembly in favor of exclusions in section 56-7-121.

Finally, Purkey argues that family and household exclusions have the effect of shifting health care costs for household members from automobile insurers to private health insurers and TennCare. AHA and amicus counter that forcing auto insurers to cover currently excluded medical costs will drive up auto insurance premiums. The choice of who will bear the burden for medical costs associated with automobile accidents is, however, a policy choice for the Legislature and not for this Court. We must assume that the Legislature considered the impact of exclusions on insureds as well as on insurers and decided that the public policy of this state is best served by broadly permitting exclusions in insurance contracts.

## Conclusion

After considering the applicable authority and the arguments of the parties, we conclude that family or household exclusions in automobile liability insurance policies do not violate Tennessee law or public policy. We therefore answer the first certified question in the negative and do not reach the second and third questions.

Costs of the appeal shall be assessed equally among the parties, Janice W. Purkey and American Home Assurance Company.

_E. Riley Anderson_

E. RILEY ANDERSON, JUSTICE

-8-